IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOHN A. TUCKER                                                                                            PLAINTIFF

vs.                                                                         CIVIL ACTION NO. 3:13CV264-SAA

COMMISSIONER OF SOCIAL SECURITY                                                        DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff John A. Tucker for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed an application for benefits on September 24, 2010 alleging disability beginning on January 1, 2005. Docket 13, p. 119-30. Plaintiff's claim was denied initially on March 8, 2011, and upon reconsideration on April 14, 2011. *Id.* at 79-80. He filed a request for hearing, but was not represented by counsel at the hearing held on May 10, 2012. *Id.* at 81-83, 36-61. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 28, 2012, and on September 24, 2013, the Appeals Council denied plaintiff's request for a review. *Id.* at 13-30, 1-3. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on September 17, 1969 and has a twelfth grade education and three years of college. Docket # 13, p. 38, 156. He was 42 years old at the time of the ALJ's decision. Plaintiff's past relevant work was as a cashier II, security guard, sales attendant, maintenance engineer, and line assembler. *Id.* at 156. Plaintiff contends that he became disabled before his application for benefits as a result of "knee, legs, joints, nerves, mind, arthritis all over body, can't manage [his] life, numb extremities, diabetic, type 2 heart failure, concentration problems." *Id.* at 155.

The ALJ determined that plaintiff suffered from "severe" impairments including "degenerative joint disease, obesity, diabetes mellitus, major depressive disorder, panic disorder, obsessive-compulsive disorder and alcohol dependence in partial remission," (Docket 13, p. 18), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), and 4165.926). *Id.* at 22. Based upon testimony by the vocational expert [VE] at the hearing and upon consideration of the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform sedentary work as defined in CFR 404.1567(a) and 416.967(a) except the claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday. The claimant can stand/walk for 2 hours in an 8-hour workday for 1 hour at a time. The claimant can never climb ladders, ropes or scaffolds. . . The claimant requires a handheld device for prolonged ambulation and uneven terrain.

Docket 13, p. 25. Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in that his claimed symptoms, stated

2

limitations and subjective complaints – particularly concerning the intensity, persistence and limiting effects of these symptoms – are not credible. *Id.* at 24. She similarly concluded that testimony from plaintiff's sister and a statement from plaintiff's friend were not credible as they were not consistent with plaintiff's own testimony. *Id.* at 24. After evaluating all of the evidence in the record, including testimony of plaintiff, his sister and a VE at the hearing, the ALJ held that plaintiff could perform the job of a quality control inspector, assembler and hand packager. *Id.* at 30. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

Plaintiff claims that the ALJ erred because he did not properly evaluate the credibility of plaintiff or his sister and did not properly evaluate the opinions of Drs. Ruhl, Adams and Buck.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

3

disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that

---

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

4

the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

#### A. Whether the ALJ properly considered the credibility of plaintiff, his sister and friend.

Plaintiff contends that the ALJ improperly afforded little weight to his allegations and complaints, as well as the statements or testimony of his sister and his friend. Docket 19, p. 17-23. As to plaintiff's credibility specifically, the plaintiff asserts that the ALJ improperly considered the records from examining consultative medical providers Drs. Buck and Politi regarding his ability to drive and his consumption of alcohol. *Id.* at 17-18. The ALJ noted that plaintiff "testified at the hearing that he had not driven in months and that he only moved vehicles in the yard when necessary. The claimant reported to Dr. Politi, who examined the

---

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

claimant less than a month prior to the hearing, that he could drive somewhat but not a lot."

Docket 13, p. 27. Similarly, plaintiff testified at the hearing that he "had no more than one drink of alcohol in the last two years," but "reported to Dr. Politi less than a month prior to the hearing that he continued to use alcohol occasionally." *Id.* During his examination, plaintiff told Dr. Buck that he had not consumed alcohol in three months.

The inconsistent testimony regarding alcohol usage and driving were only two examples of inconsistent testimony the ALJ relied upon when concluding that plaintiff was not credible. She also considered and throughly reviewed his medical records and found a lack of objective findings to support his significant complaints. Docket 13, p. 26. For instance, despite alleging disability beginning on June 1, 2005, plaintiff did not receive treatment prior to May 2010 and that was for court ordered alcohol abuse. The Commissioner responds that the ALJ properly noted plaintiff's appearance and demeanor at the hearing and considered it in conjunction with other factors in evaluating the plaintiff's credibility. Docket 20, p. 9. In her opinion, the ALJ noted that

> Claimant testified that he could only sit for 15 to 20 minutes before his feet when numb and his pain increased. The claimant portrayed no evidence of pain or discomfort while testifying at the hearing, which lasted approximately 45 minutes. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of claimant's allegations and the claimant's residual functional capacity.

Docket 13, p. 27. The Fifth Circuit has routinely held that "it is not reversible error for an ALJ to consider demeanor as one of the factors in evaluating a claimant's credibility." *Taylor v. Apfel*, 172 F.3d 870 (5th Cir. 1999), citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In evaluating plaintiff's credibility, the ALJ considered the medical records and opinions of at least four physicians, testimony by plaintiff's sister, a statement of a friend, and plaintiff's own testimony. The ALJ thoroughly analyzed the plaintiff's medical treatment records and the records of examinations requested by Social Security. The ALJ properly used her discretion in weighing the credibility of plaintiff's complaints, and her ultimate determination was based upon the record as a whole. Because the record amply supports the ALJ's conclusion, this argument is without merit.

Similarly, plaintiff asserts that the ALJ improperly discounted the credibility of both Debbie Yount, plaintiff's sister, and his friend, Ray Terry Yount. Plaintiff asserts that the ALJ discounted the testimony of both witnesses because they are not medical professionals and because at least one of them has a financial interest in seeing plaintiff receive benefits. Docket 13, p. 28. However, she specifically discounted the credibility of the information they provided "to the extent that their statements are inconsistent with the [RFC] determination herein." *Id.* Even if the ALJ had afforded the lay witness testimony significant weight, the record medical opinions are still controlling and establish the basis for the RFC. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). The lay witnesses' testimony does not establish any impairments more significant that the ALJ's RFC, which was based on medical records and opinions.

### B. Whether the ALJ properly considered the opinions of the plaintiff's treating physician.

Plaintiff contends that the ALJ's ultimate opinion is not supported by substantial evidence because she did not afford proper weight to his treating physician's opinions and did not perform the proper six-part analysis for discounting the treating physician's opinions. Docket 19, p. 7.

7

The Commissioner responds, and this court agrees, that the ALJ properly discounted Dr. Ruhl's opinions because they were not supported by objective, clinical evidence. For an ALJ to properly afford lesser weight to the treating physician's medical opinions, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ did perform a complete analysis of Dr. Ruhl's opinions.

Dr. Ruhl submitted a medical source statement stating that plaintiff has degenerative joint disease and rheumatoid arthritis dating back to June 2006. However, Dr. Ruhl only began treating plaintiff in 2011 and only saw him twice before completing the MSS. Because Dr. Ruhl's opinion regarding the rheumatoid arthritis was not confirmed by any laboratory findings or any other evidence in the record, and because Dr. Ruhl never saw plaintiff before 2011, the ALJ properly chose not to afford the opinion controlling weight. Plaintiff notes that SSR 96-9p indicates that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . . ." However, as the Commissioner points out, even if the ALJ had included the postural limitation in the hypothetical to the VE, the occupational base would not have been restricted because the three jobs identified by the VE that plaintiff could perform do not include climbing, balancing, stooping, kneeling, crouching, and crawling. Docket 20, p. 25. Therefore, this argument is without merit.

### C. Whether the ALJ erred by not specifying the weight he accorded the opinions of consultative examiners.

The ALJ thoroughly discussed the exams and opinions of Drs. Adams and Buck, but the

8

plaintiff asserts that the failure to assign any specific weight to their opinions results in a flawed ultimate opinion. Docket 19, p. 11. The Commissioner concedes that the ALJ did not actually quantify the specific weight he granted the opinions of Dr. Adams or Dr. Buck, but notes that the ALJ did discuss both opinions at great length and did include plaintiff's need for a cane and other limitations provided by both physicians in the RFC. Plaintiff relies upon the Tenth Circuit's decision in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) for the proposition that an ALJ "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

Even though it is clear that the ALJ did not assign a specific weight to either of these opinions, the undersigned nevertheless is able to meaningfully review the opinion and conclude that the ALJ included all of the limitations provided by Dr. Adams and Dr. Buck in the RFC. Specifically, the ALJ included in the RFC the fact that Dr. Buck stated that plaintiff would likely have difficulty getting along with others when she limited plaintiff to jobs that do not interact with the public at all. Plaintiff asserts that the ALJ's failure to include an inability to perform tasks without supervision was error. In fact, Dr. Buck indicated that plaintiff could perform routine, repetitive tasks with "prompting." In the court's opinion, plaintiff misconstrues that statement to mean that plaintiff therefore could not perform tasks on his own. There is no indication in Dr. Buck's records that plaintiff could not perform tasks on his own, and a mere indication of the amount of weight the ALJ afforded to Dr. Buck's opinions would not have changed the RFC. Plaintiff's assertion that the ALJ's ultimate opinion is flawed simply because the ALJ did not assign a specific weight to the Adams and Buck opinions is without merit.

## D. Whether the ALJ erred in her findings concerning
## plaintiff's failure to secure additional medical treatment

Plaintiff asserts that the ALJ erred by not inquiring whether plaintiff attempted to obtain free or discounted medical treatment, then finding that the record contained no evidence that he had. Docket 19, pp. 9-11, 27. The Commissioner responds that the ALJ did not improperly consider plaintiff's inability to pay for medical treatment or obtain further medical treatment due to lack of funds, but instead simply pointed out that even though plaintiff claims his disability began in 2005, he did not seek any medical treatment until 2010, and even then the treatment was involuntary – he was ordered by the court to obtain in patient alcohol rehabilitation. It is true that plaintiff has not received much medical care for his alleged impairments, but the ALJ did not base her decision to deny benefits on that fact. In fact, there are no visits to a physician on record for the period of time before plaintiff's date last insured other than the visits that appear to relate to plaintiff's alcoholism.

There is no evidence in the record that plaintiff attempted to obtain free or discounted medical care, even when it was offered to him by Dr. Ruhl. The court is sensitive to the needs of individuals without means to obtain healthcare and of *pro se* parties in litigation, particularly in this rural area, but there is simply no evidence that plaintiff has availed himself to any opportunities to obtain the proper care for his alleged impairments. Plaintiff does not assert that he had no access to free or discounted medical treatment as was the case in *Blackl v. Commissioner*, 3:13cv166-SAA. Even now that plaintiff has counsel, no evidence has been presented that plaintiff has attempted to obtain further treatment. Therefore, plaintiff's argument that the ALJ's opinion is unsupported by substantial evidence fails.

The court concludes that in light of the objective evidence, the opinions from consultative and the treating physician and the testimony of plaintiff and lay witnesses, the ALJ had sufficient evidence to determine plaintiff's impairments and to make the ultimate decision regarding disability. Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairments met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the treatment records of the plaintiff's treating physician Dr. Ruhl, as well as the consultative exams performed at the ALJ's request. The plaintiff did not provide credible evidence that his alleged impairments affect his ability to work, and the ALJ adequately explained her reasons for questioning the plaintiff's credibility. The court holds that the decision of the Commissioner should be affirmed.

## IV. CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 17th of July, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE